```
        IN THE UNITED STATES DISTRICT COURT FOR
       THE DISTRICT OF MARYLAND, NORTHERN DIVISION
```

|  |  |
|---|---|
| CHET PAJARDO, | * |
|    Petitioner, | * |
|       v. | *    CIVIL NO.:    WDQ-08-0628 |
|  | *    CRIMINAL NO.: WDQ-04-0323 |
| UNITED STATES OF AMERICA, | * |
|    Respondent. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Pending is Chet Pajardo's *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, Pajardo will be permitted to file a belated appeal.

I. Background

On February 1, 2005, Pajardo, Howard and Raeshio Rice, Eric Hall, and nine other defendants were indicted for offenses related to their large, violent cocaine and heroin trafficking organization which operated in the Baltimore area from 1995 to February 2005. Pajardo was charged with conspiring to distribute cocaine in violation of 21 U.S.C. § 846.

Also on February 1, 2005, search warrants were issued for Pajardo's home, business, and eight other locations. During the search, police seized more than four kilograms of cocaine and a firearm. On October 11, 2005, a Second Superseding Indictment

1

charged Pajardo with additional narcotics and firearms offenses based on the seizure.

On July 18, 2006, Pajardo agreed to plead guilty to conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine.  *See* Gov't Ex. A.  The parties disagreed about the applicable base offense level.  *Id.* ¶ 6.b.  Under the plea agreement, the Government could present evidence at sentencing about the amount of cocaine reasonably attributable to Pajardo during the conspiracy.  *Id.*  The plea agreement provided that the base offense level would be reduced by three levels for Pajardo's timely acceptance of responsibility.  *Id.* ¶ 7.  The plea agreement also provided that Pajardo would waive appeal from a sentence within or below the 168-210 month guidelines range for an adjusted base offense level of 35, criminal history category I.  *Id.* ¶ 12.

The Government contended that Pajardo's base offense level should be 38, pursuant to U.S.S.G. § 2D1.1(c)(1).  The sentencing range for an adjusted offense level of 35, criminal history category I, is 168-210 months.  Pajardo asserted that his base offense level should be 32, pursuant to U.S.S.G. § 2D1.1(c)(4).  *Id.*  The sentencing range for an adjusted offense level of 29, criminal history category I, is 87-108 months.

On March 6, 2007, the parties agreed to a sentence of 151 months--the bottom of the range for the compromise offense level

of 34 and a criminal history category of I.  *See* Gov't Ex. C. The Court accepted the agreement and sentenced Pajardo to 151 months imprisonment on March 8, 2007.

On March 10, 2008, Pajardo filed this motion to vacate.  He was appointed counsel, and the Court held a hearing on December 16, 2008.

II. Analysis

    A.   Standard of Review

The Sixth Amendment guarantees the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To prove ineffective assistance of counsel, Pajardo must show that: (1) counsel's deficient performance (2) prejudiced his defense. *Id.* at 687.  Pajardo must establish that counsel made errors so serious that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  Pajardo must also demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

Judicial scrutiny of attorney performance asks whether counsel's assistance was reasonable under the circumstances.  *Id.* at 688.  This scrutiny is highly deferential.  *Id.* at 689.

    B.   Breach of the Plea Agreement

Pajardo claims that he did not receive a reduction for acceptance of responsibility as required under the plea

3

agreement, and he received ineffective assistance of counsel because his counsel failed to object to the Government's breach of the plea agreement.

The agreement to a sentence of 151 months superseded the original plea agreement. Pajardo testified that he believed the agreed-upon sentencing range was to be reduced by three levels at sentencing. Hrg. Tr. at 10, Dec. 16, 2008. When he pled guilty, Pajardo affirmed orally and in writing that he had entered the supplemental agreement knowingly and voluntarily, and had reviewed the agreement with counsel. At the hearing, Pajardo's trial counsel, James Gitomer, Esquire, testified that he and Pajardo had discussed the 151-month stipulation, and Pajardo knew that he would receive that sentence. Hrg. Tr. at 19-20, Dec. 16, 2008. Gitomer testified that Pajardo was not disappointed after sentencing because he "knew exactly what he was going to get." *Id.* at 21. There was no basis for Pajardo's counsel to object to the 151 month sentence.

C.   Failure to File an Appeal

Pajardo claims that he is entitled to an appeal because his counsel failed to file a notice of appeal despite his request to do so. The Government responds that Pajardo never requested an appeal.

An attorney must file an appeal when his client instructs him to do so. *United States v. Poindexter*, 492 F.3d 263, 269

4

(4th Cir. 2007); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). If so instructed, an attorney is required to file an appeal even if (1) the client has waived his right to appeal (in a plea agreement, and (2) it would be harmful to the client's interests. *Poindexter*, 492 F.3d at 273.

An attorney who consults with his client and is not instructed to appeal is not deficient when he fails to appeal. *Roe*, 528 U.S. at 478.  The Supreme Court "expect[s] that courts . . . will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal."  *Id.* at 481.  "[C]ounsel has a constitutionally imposed duty to consult . . . when there is reason to think either (1) that a rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."[1]  *Id.* at 480.

If counsel's deficient performance stripped the defendant of his right to appeal, *Strickland* prejudice is presumed.  *Roe*, 528 U.S. at 483.  "Thus, where the defendant unequivocally instructs an attorney to file a timely notice of appeal, prejudice is presumed because it results in the 'forfeiture' of the appellate

---

[1] In making this determination, courts take into account the information counsel knew or should have known at the time, such as whether the conviction was the result of a trial or guilty plea. *Roe*, 528 U.S. at 480.  When there is a plea, courts look at whether the defendant received the sentence bargained for, and whether the plea agreement waived appeal rights. *Id.*

proceeding." *Poindexter*, 492 F.3d at 268.  If a defendant did not instruct his attorney to appeal and his attorney did not consult with him about it, the "defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."  *Roe*, 528 U.S. at 484; *Poindexter*, 492 F.3d at 268-69.  The question is whether the defendant would have appealed, not whether his appeal would have been successful.  *Roe*, 528 U.S. at 486.

Pajardo testified that while he was leaving the courthouse after sentencing, he asked his counsel, James Gitomer, Esquire, to appeal.  Hrg. Tr. at 10-11.  Pajardo testified that he never asked Gitomer about the status of his appeal afterwards because he "thought it took time."  *Id.* at 12.

On direct examination, Gitomer testified that Pajardo never asked for an appeal.  *Id.* at 14.  Gitomer stated that if Pajardo had asked for an appeal, he would have discussed it with him and filed one.  *Id.*  Gitomer testified that Pajardo's case was memorable because he was one of his "easiest clients," and his family was easy-going and intelligent.  *Id.* at 14-15.  On cross-examination, Gitomer testified that he did not think he and Pajardo discussed an appeal after sentencing, but he was not

sure.[2]  *Id.* at 18.  Gitomer also acknowledged that he has handled "easily" more than 200 cases since Pajardo's.  *Id.* at 18.

Pajardo testified unequivocally that he asked Gitomer to appeal.  Gitomer testified that Pajardo did not ask for an appeal, and that Gitomer was unsure whether they had discussed an appeal.  Given the equivocal nature of Gitomer's testimony, the Court must find that Pajardo asked Gitomer to file an appeal.  As prejudice must be presumed from Gitomer's failure to file an appeal, the Court will grant Pajardo a belated appeal.  *Poindexter*, 492 F.3d at 268.

III. Conclusion

For the reasons stated above, Pajardo will be granted a belated appeal.

February 13, 2009                              /s/
Date                                    William D. Quarles, Jr.
                                        United States District Judge

---

[2] The following occurred during cross-examination:
Andrew Szekely (Pajardo's counsel): Well, let me take a step back.  After Mr. Pajardo was sentenced to 151 months, you testified that he never asked you to file an appeal?
Gitomer: Correct.
Szekely: Did you discuss with him the possibility of an appeal following the entrance of that plea?
Gitomer: That, I can't recall, but he--it was unusual in that he was not taken away, that he was self surrender.  I don't believe we did, but I can't say for sure.
Hrg. Tr. at 17-18.